612    APPELLATE COURTS OF ILLINOIS.

VOL. 74.] Alton Paving, Building & Fire Brick Co. v. Hudson.

---

## Alton Paving, Building and Fire Brick Co, v. William Hudson.

1.  WAIVER—*Of Error in Refusing to Instruct the Jury to Find for the Defendant.*—Where a party asked the court to instruct the jury to find for the defendant, which being refused, he introduced evidence upon all the issues involved in the case, and at the conclusion asked a series of instructions to be given to the jury for their guidance, etc., he was held to have waived his right to assign such refusal for error.

2.  FELLOW-SERVANTS—*And Vice-Principal.*—An employe of a common master may at the same time sustain toward another servant, both the relation of fellow-servant and that of vice-principal. There are cer-

tain duties which the law imposes on the master, among which is the instruction of inexperienced servants; and whoever, with the consent of the master, undertakes the performance of these duties, is, while so performing, a vice-principal.

3. DAMAGES—*$7,500 Not Excessive.*—A man, forty-two years of age, engaged at assisting in the operation of a steam shovel used in cutting shale and clay from a bank, while oiling " the chain " was thrown down by a slide of clay, and injured so severely as to become totally disabled for life. *Held,* that a verdict for $7,500 was not excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Madison County; the Hon. GEORGE W. WALL, Judge, presiding. Heard in this court at the August term, 1897. Affirmed. Opinion filed March 1, 1898.

WISE & McNULTY, attorneys for appellant.

J. E. DUNNEGAN and TRAVOUS & WARNOCK, attorneys for appellee.

An employe of a company, having such control of other servants that they are bound to obey his orders, is not a fellow-servant with such persons within the meaning of the rule that prevents a recovery by a servant of his master for the negligence of a fellow-servant; and the commands of such employe, within the scope of his authority, are to be regarded as those of the master. Consolidated Coal Co. v. Wombacher, 134 Ill. 57; Chicago & A. R. R. Co. v. May, 108 Ill. 288; Wenona Coal Co. v. Holmquist, 152 Ill. 590; Wabash, St. L. & P. Ry. v. Hawk, 121 Ill. 263; Mobile & O. R. R. Co. v. Massey, 52 Ill. App. 562; Illinois Steel Co. v. Schymanowski, 162 Ill. 456; Fanter v. Clark, 15 Ill. App. 470; Libby, McNeill & Libby v. Scherman, 146 Ill. 540.

MR. PRESIDING JUSTICE CREIGHTON DELIVERED THE OPINION OF THE COURT.

This was an action on the case by appellee against appellant in the Circuit Court of Madison County, to recover for an injury received by appellee, while in the service of the appellant, engaged at assisting in the operation of a steam shovel, used for the purpose of cutting shale and clay from a bank of that material and mixing and loading the same into cars.

614    APPELLATE COURTS OF ILLINOIS.

VOL. 74.] Alton Paving, Building & Fire Brick Co. v. Hudson.

Trial was by jury. Verdict for appellee for $7,500. Motion for new trial overruled. Judgment on the verdict for the appellee. Appellant duly excepted and brings the cause to this court, and presents as grounds for reversal that there is a variance; that the court gave improper instructions at the instance of appellee; that the court modified and refused proper instructions asked by appellant; that the jury should have been instructed to find appellant not guilty, and that the verdict is excessive.

Appellant owned and was operating, near Alton, Illinois, an extensive plant for the manufacture of brick, at which was in use in one department, a machine called a steam shovel. This machine was manned by a crew consisting of an engineer, a fireman and a craneman.

The bank from which shale and clay was being taken was about thirty feet high. The lower twenty feet consisted of shale, the upper ten feet being clay. The shovel when in operation for cutting or "digging" had its stroke from the bottom upward, reaching to a height of about twenty-one feet, passing through the shale and a little into the clay. The shovel in operation would go up from the bottom with a curve, the greatest depth cut into the bank being at the center of the total reach. As the work of the steam-shovel crew progressed against the breast of the bank another crew of men from the top worked down the clay, lying above the reach of the steam shovel, with spades, picks and "spud bars," dropping it at the bottom of the pit, where it and the shale that was loosened by the machine were mixed for loading into cars to be taken to another department of the plant. This steam shovel had been in operation on that bank for six or seven months.

Appellee was forty-two years old, an iron worker by trade and had no experience with a steam shovel or at any kind of work in shale or clay banks. In March, 1894, he was employed by appellant as craneman to assist in operating the steam shovel. His duty was to set the shovel or dipper when cutting or digging into the bank, manipulate it when mixing the shale and clay and while loading the mixture

onto the cars, and to oil certain parts of the machine. His position while at work was a dangerous one. Large slides of clay frequently fell, especially during the spring. This was well known to appellant and all employes accustomed to work there. Appellee was not warned of this danger by any one and had no means of knowing it, except such general knowledge of clays and of natural laws as men of his intelligence and previous occupation would usually have, and his opportunity to observe during the short period he worked there before he was injured. He commenced this service on Tuesday and on the following Saturday (the fifth day), at 2:30 o'clock in the afternoon, he was directed to oil the chain, and to do so it was necessary for him to climb up "the mast" about twenty feet from the bottom. He had reached his position on the mast and was pouring on the oil when a slide of clay, about eight feet long and two feet wide, broke loose from the bank above and fell on him, throwing him to the bottom and so severely injuring him that he has ever since been totally disabled and will remain so during life, and will probably die of these injuries.

The principal conflict in the evidence is as to the extent of the notice appellant had of appellee's inexperience and want of knowledge of the danger, at the time appellee was employed. Appellee testifies that the superintendent at the time he was employed, asked him if he could run the crane on the steam shovel and that he told him he did not know if he could, that he had never worked a steam shovel; didn't know anything about clay banks; that the superintendent said he would show him, and that he would have the engineer for his boss, and for him to do just what the engineer "tells" him. Appellee also testifies that he told the engineer he knew nothing about his work; that he was green, and never before had worked in a clay bank. The superintendent admits that appellee did say to him, that "he did not have any experience in that kind of work," and that "he told him the engineer would show him and instruct him what he was to do, and that he should obey the engineer's instructions."

616    APPELLATE COURTS OF ILLINOIS.

VOL. 74.] Alton Paving, Building & Fire Brick Co. v. Hudson.

The engineer admits that he knew appellee had not run a crane before, and that he was requested by the superintendent to tell him what to do and show him how to do it and that he did so. There is some conflict as to whether appellee had been at work there five days or eight days when he was injured. He testifies that he was employed on Tuesday and was injured on Saturday, and the superintendent testifies that "he commenced to work there about five days before the accident." In some places in the testimony the time is referred to as eight days. Appellant's principal witnesses agree that the place where appellee was set to work was a dangerous place, and that he was not warned of the danger nor instructed concerning it. They also agree in such statements as show that appellant was fully aware of the fact that the place was dangerous, and of the full extent of the danger before appellee was set to work there. The superintendent testifies that the clay frequently came down in large chunks. "I knew this when I put Mr. Hudson to work there. I did not tell Mr. Hudson that the clay fell from there and was liable to hurt him. Nothing was said about it." The engineer testified, "I knew all the time I was there that the bank caved. Caved there especially in the spring. * * * I was fireman from August, the year before; * * * I had craned before that time. I was perfectly familiar with the condition there." That he directed appellee in his work; that the superintendent had requested him to do so, and that appellee did as directed. "I knew that the clay was falling down there frequently. I knew it was dangerous. * * * I did not caution him against danger."

Appellee testified that he had not observed any clay falling, until that which caused his injury; that he had no notice or warning or knowledge that the place was dangerous.

We fail to find in the testimony any such departure from the material averments of the declaration as amounts to a variance.

We find no material error in the instructions given by the court at the instance of appellee, nor in the one given

by the court of its own motion. The alleged variance and the objections urged against these instructions properly pertain to the contention that the jury should have been instructed to find appellant not guilty.

We are unable to find any such modification of appellant's twentieth instruction as is complained of.

It is contended that the court erred in refusing certain of appellant's instructions. Appellant asked the court to give twenty-two separate instructions. The court refused a number of them, but the law upon every material issue in the case is embraced in those given. Special complaint is made of the refusal to give the eleventh instruction. All that is of proper value in that instruction is embraced in appellant's twenty-second, which was given.

At the conclusion of appellee's testimony appellant asked the court to instruct the jury to find defendant not guilty, and the court refused to give the instruction. Appellant then introduced testimony upon all the issues involved in the case, and at the conclusion of the trial asked a series of twenty-two instructions, twenty of them to be given to the jury for their guidance in applying the rules of law to the questions of fact raised by the evidence, and two of them, the twelfth and thirteenth, to be given to the jury to take the consideration of the case from them, directing the jury to find defendant not guilty. Upon this state of the record the alleged error in refusing to give the instruction asked at the conclusion of appellee's testimony, and the twelfth and thirteenth of the series asked at the conclusion of the trial, need not to be considered. By introducing testimony after the refusal to give its instruction when first asked appellant waived the right to assign error upon the first refusal, and by asking at the close of the trial a series of instructions submitting the case to the jury, in connection with those taking the case from the jury, appellant waived the right to assign error upon the second refusal. These questions have lately been under consideration. Gilbert v. Watts-DeGolyer Co., 169 Ill. 129; West Chicago Street R. R. Co. v. Feldstein, 169 Ill. 139, and West Chicago Street R. R. Co. v. McCallum, 169 Ill. 240.

618    APPELLATE COURTS OF ILLINOIS.

VOL. 74.] Alton Paving, Building & Fire Brick Co. v. Hudson.

Appellant contends that Borden, the engineer, was a fellow-servant of appellee. While we do not consider this a controlling question in the case, it is worthy of notice. An employe of a common master may at the same time sustain toward another servant both the relation of fellow-servant, and that of vice-principal. There are certain duties which the law imposes upon the master, and whoever with the consent of the master undertakes to perform any part of any of these duties is, while in the act of such performance, a vice-principal. Among these duties are, to instruct an inexperienced and uninformed servant, to warn him of the dangers of his situation and advise him of the proper means of escaping injury.

Appellee was inexperienced and uninformed, of which the testimony tends to show appellant was aware, and the place where appellee was set to work was specially dangerous, which appellant fully knew. Under these circumstances appellant placed appellee in ward of Borden with these instructions: "You will have the engineer for your boss, and you just do as he tells you and you will be all right." As to appellee, Borden was a vice-principal, and would be until their relations changed, or until such time as appellee might, by reasonable diligence, have learned to know and appreciate the dangers of his situation. But appellant contends that appellee had already had time before the injury to learn and appreciate the danger. He was new in the place, green at the business, attentive to obey orders, intent upon learning to manipulate the machine, his whole time taken up in handling it, in the cutting, mixing and loading forty cars a day with the product, and not a word of warning or instructions concerning the danger was given him. Whether less than five days was a reasonable time, under these conditions, is not a question of law for the court, but a question of fact for the jury, and was properly submitted to the jury.

It is also contended that appellee himself did the "digging" and that he is responsible for the dangerous condition of the bank. He had nothing to do with the plan of the

work, and the superintendent's testimony fully shows that he was not in the least responsible for the manner of its execution. "He obeyed the engineer's instructions and did the work as the engineer told him. Mr. Hudson pulled the lever, I suppose, when the engineer told him. The engineer would pull the crane around to the position where he thought was advantageous to load it, and he would have Mr. Hudson pull the lever. The engineer would hoist the dipper and Mr. Hudson would feed the dipper into the bank, and by the engineer hoisting it, it would fill up, and when it was filled up, the engineer would swing it around to the table and dump it, and Mr. Hudson pulled the lever."

Lastly it is contended that the damages are excessive. Appellee has suffered months and years of pain and anguish, and is totally disabled for life. Prior to his injury he was an able-bodied man, an iron worker by trade, in ordinary times could earn from $12 to $18 a week. We do not feel that the amount of the verdict is such excessive compensation for all that appellee has suffered and lost by this injury, as calls upon us to reverse this case, and remand it.

The judgment of the Circuit Court is affirmed.